**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DAEDALUS CAPITAL LLC, and**
**LOCKWOOD TECHNOLOGY**
**CORPORATION,**

           **Plaintiffs,**

**v.**                                        **Case No. 8:12-cv-2533-T-35TBM**

**BRADFORD VINECOMBE, BRUNO**
**RIEGL, ADAM VINECOMBE, ERIC**
**VINECOMBE, LOCKWOOD**
**WORLDWIDE INC. n/k/a**
**Verasset Corporation, and**
**SWIFTSURE GROUP, LLC,**[1]

           **Defendants.**

_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the Court for a Report and Recommendation on

**Defendants' Motion to Dismiss** (Doc. 112).  Plaintiffs have filed a response in opposition

(Doc. 117).  As explained below, it is recommended that Defendants' Motion be denied.

A.

      By their verified Amended Complaint, Daedalus Capital, LLC (Daedalus), a Florida

limited liability company, and Lockwood Technology Corporation (LTC), a New Hampshire

corporation headquartered in Florida, sue Defendants Bradford Vinecombe (Vinecombe),

---

[1] Former Defendants Cheryl S. Reed and Sovereign Bank, NA., have been dismissed
from this suit since the filing of the Motion.  _See_ (Docs. 168, 170).

former president of LTC; Bruno Riegl (Riegl), former vice president of LTC and head of

sales; Adam and Eric Vinecombe, former employees of LTC and Vinecombe's sons;

Lockwood Worldwide, Inc. (LWW), n/k/a Verasset Corporation, a New Hampshire

corporation; and Swiftsure Group LLC (Swiftsure), a Florida limited liability company.

(Doc. 94).  In short, Plaintiffs allege they were unlawfully targeted and defrauded of their

property by Defendants through an unlawful conspiracy in violation of federal and state

racketeering laws involving acts of mail and wire fraud, money laundering, forgery, and theft,

and by acts of common law fraud, conversion, breach of fiduciary duty, and civil theft.[2]  They

claim more than $5 million in actual damages.  Pertinent to this Motion are the following

counts:

_____

[2]By the allegations, in 2009 LTC was owned by Vinecombe and in the business of
providing asset tracking software and implementation.  Riegl was an officer in charge of
sales.  Vinecombe also owned LWW, which was in the business of physical asset inventory
counting.  Adam and Eric Vinecombe were employees of LWW.  Vinecombe sold to
Daedalus a 70% interest in LTC in May 2009 for $1.25 million.  In connection with this
purchase, Vinecombe and Riegl entered into a Non-Compete and Non-Disclosure Agreement
with LTC.  Thereafter, Vinecombe and Riegl, along with the other Defendants, began to
divert LTC's revenues, receivables, business prospects, and/or contracts to LWW.
Defendants, including Swiftsure, allegedly conspired to defraud LTC of its software
technology, property, and related sales revenues.  Plaintiffs allege Defendants were associated
in fact in a criminal enterprise and engaged in this pattern of racketeering activity between
2009 and April 2012 and thereafter.  A summary of the alleged criminal acts by the
Defendants is found at ¶ 7 of the Amended Complaint.  As Defendants' Motion more
generally describes the suit:

> This case concerns allegations by Daedalus, LTC's one time majority share
> holder, and LTC, against another former majority shareholder of LTC,
> Bradford Vinecombe, former employees of LTC, Bruno Riegl, and [ ], and
> [LWW], a company owned by Vinecombe's sons, Adam Vinecombe and Eric
> Vinecombe, for LWW's alleged misappropriation of corporate opportunities
> and payments that LWW received from its customers for products and work
> that LTC claims belonged to LTC.  (Doc. 112 at1-2).

Count I -        violation of the Racketeering Influence & Corrupt Organization (RICO) Act, 18 U.S.C. §§ 1962(c) and 1964 (against all Defendants);

Count II -       conspiracy to violate the RICO Act in violation of 18 U.S.C. §§ 1962(d) and 1964 (against all Defendants);

Count III -      violation of Fla. Stat. §772.103(3), Florida's Civil Remedies for Criminal Practices Act (the Florida RICO Act) (against all Defendants);

Count IV -       conspiracy to violate Fla. Stat. §772.103(4) of the Florida RICO Act (against all Defendants);

Count V -        fraud in the inducement (against Vinecombe and Riegl);

Count VI -       common law fraud (against all Defendants);

Count VII -      civil conspiracy (against the Vinecombes, Riegl, and LWW);

Count IX -       aiding and abetting and/or conspiracy to breach a fiduciary duty (against all Defendants);

Count X -        conversion (against the Vinecombes, Riegl, and LWW);

Count XI -       breach of fiduciary duty (against Vinecombe and Riegl);

Count XII -      civil theft in violation of Fla. Stat. § 772.11 (against the Vinecombes and LWW).[3]

By their Motion to Dismiss, Defendants initially argue that, to the extent Daedalus purports to sue on behalf of LTC as a shareholder of LTC, "as it does in Counts 6, 7, 9 and 14," it lacks standing to bring a direct action and fails to properly allege a shareholder derivative action consistent with Fed. R. Civ. 23.1(b).  As grounds, they assert that Daedalus has failed to allege that it was a shareholder at the time of the transactions complained of or

---

[3]The Amended Complaint is less than a model of clarity as to which Plaintiff is pursuing each count.

that it continues to own LTC's stock, and that, prior to bringing suit, it failed to make a reasonable demand on LTC's board of directors to initiate this action or failed to allege the board's reasons for not acting on its demand.

As for the federal RICO counts (Counts I and II), Defendants assert the claims are fundamentally based on the allegations that Defendants comprised a criminal enterprise and that, through a conserted effort, LWW misappropriated 27 payments from ConnSCU, EMC, and Qatar University (QU) for work performed by LTC. Defendants argue that underlying the claims is the un-alleged allegation that LTC was entitled to receive the whole of the payments such that LWW's receipt of the same was fraudulent. Thus, they urge that LTC alleges no particularized bases for its conclusory allegations that it was entitled to these monies or that Defendants engaged in a criminal enterprise or pattern of racketeering activity to defraud it. As for particular payments from LWW to Vinecombe and Riegl, Defendants urge that Plaintiffs again fail to allege facts to support that the payments were fraudulent or constitute wire or bank fraud. As for the conspiracy allegations, they urge that LTC fails to allege that each of the Defendants agreed to the overall objective of the conspiracy or that the Defendants agreed to commit two predicate acts. In sum, they assert that LTC relies upon conclusory allegations and unwarranted deductions and legal conclusions which are insufficient to state such fraud claims and should be dismissed pursuant to Rule 12(b)(6).

As for the Florida RICO counts (Counts III and IV), Defendants note that due to the similarities between the state and federal statutes, state courts look to federal law in interpreting the Florida Rico Act. Thus, for the same reasons offered in opposition to Counts I and II, Defendants urge these Counts III and IV should also be dismissed.

4

As for Counts V, VI, VII, IX, X, XI, and XII, Defendants urge that all are based on conclusory allegations and none are pleaded with sufficient particularity to state a claim for relief and all should be dismissed.  Defendants repeatedly assert that the claims by Plaintiffs that they were defrauded for monies and or business opportunities are unsupported by any allegations that establish they were entitled to the monies or business opportunities.

Regarding the claim for fraud in the inducement alleged in Count V, Defendants contend that it is based on a representation by Vinecombe that neither he nor Riegl would compete with LTC while employed by LTC and for two years after separation from LTC, and that representation induced Daedalus to purchase an interest in LTC for $1.25 million. Defendants urge that the fraud claim lacks sufficient detail about the purported misrepresentations and what Vinecombe did to actually compete against LTC.  Moreover, they contend that the claim is fundamentally based on the allegation that Vinecombe was subject to an employment agreement with LTC that prevented him from competing with LTC and thus, under the economic loss rule, the appropriate remedy is for breach of contract rather than a fraud claim.

As for the common-law fraud claim against all Defendants in Count VI, Defendants again assert that the allegations are wholly conclusory and without sufficient particularity regarding the alleged misrepresentations and how Plaintiffs were damaged by the misrepresentations.

As for the civil conspiracy claim against all Defendants in Count VII, the allegations are that Vinecombe and Riegl on the one hand, and the remaining Defendants on the other, engaged in a conspiracy to conceal LTC's business prospects with QU and ConnSCU and

5

proceeds flowing from such entities, and by issuing a fraudulent license for use of LTC software and technology, causing LTC damages in excess of $4 million and Daedalus damages in excess of $1 million.  Defendants complain that the allegations lump all of them together and in conclusory fashion assert a conspiracy without sufficient detail of the role played by each Defendant.  In their view, the scant allegations are insufficient to support an inference of an agreement as to all the Defendants.  As with the RICO and other fraud counts, they maintain that the allegations fail to sufficiently allege the purported fraudulent conduct as to each Defendant.

In Count IX against all Defendants, the allegations are that Vinecombe and Riegl, as officers of LTC, breached their fiduciary duties owed to LTC by failing to act in the best interests of LTC and by engaging in a fraudulent scheme to advance Defendants' interests, and the remaining Defendants knowingly rendered substantial assistance in regards to the breaches and actively conspired in the breaches.  In Count XI, the allegations are that Vinecombe and Riegl breached fiduciary duties owed to LTC as officers and directors by failing to protect LTC's interests by receiving, in bad faith, $5 million in fraudulent transfers from LTC for no equivalent value; by failing to protect LTC's interests in regards to the ConnSCU and QU contracts; by making false declarations; and by converting $5 million of LWW funds to their own benefit.  As to both counts, Defendants again argue that Plaintiffs rely on insufficient, conclusory allegations of a fraudulent scheme which deprived LTC of payments by ConnSCU and EMC to LWW without stating a factual basis for any claim by LTC that it was entitled to such monies.  They also contend there is inadequate particularity to Plaintiffs' allegations of a fraudulent transfer of $5 million.  Defendants again assert a

6

factual bar to the claim because it was LWW that provided the physical inventory services paid for, not LTC, and that LTC provided no software or services which might have entitled it to some of the proceeds from ConnSCU and EMC.

Regarding LTC's conversion claim in Count X against all Defendants except Swiftsure, LTC alleges that Defendants knowingly acted to divert funds from QU and ConnSCU, as well as checks payable to LTC to LWW for disbursement among Defendants. Defendants again argue the allegations are conclusory and lack sufficient particularity to establish a fraudulent scheme and/or that LTC had any claim to the monies allegedly diverted. They again asserts that the facts are that LWW provided services and LTC did not, and, thus, LTC can state no basis for its claim to the monies.

Finally, in LTC's claim at Count XII for civil theft against all Defendants except Swiftsure, LTC alleges it is entitled to treble damages for the losses associated with the alleged fraudulent scheme.  Defendants argue that the conclusory allegations make unclear the bases for this claim.  If based on the same contention that LTC and not LWW was entitled to all the payments from ConnSCU and EMC, the factual bases for such claim is insufficiently stated.  Moreover, the facts support that LWW provided the services and was entitled to the payments, and LTC is without a factual bases to support its claim to the proceeds.

In response, Plaintiffs urge that insofar as Defendants argue that Daedalus here attempts to bring a shareholder derivative action for damages suffered by LTC, they misread the Amended Complaint.  Rather than asserting such derivative claims, Plaintiffs state that Daedalus sues in it own behalf for losses it sustained as a consequence of Defendants'

7

fraudulent activities.  Moreover, Plaintiffs assert that each cause of action against each Defendant is properly pleaded, setting forth dates and times and the manner and means of the fraudulent schemes.  Plaintiffs contend such allegations are more than adequate to satisfy the heightened standard for pleading fraud claims.

B.

A motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, is a motion attacking the legal sufficiency of a complaint.  In deciding such a motion, the court must accept the facts pleaded as true and construe them in a light most favorable to the plaintiff.  *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009) (citation omitted).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).

In alleging fraud, Rule 9 prescribes that "a party must state with particularity the circumstances constituting fraud . . ."  Fed. R. Civ. P. 9(b).  The application of Rule 9(b) does not abrogate the concept of notice pleading.  Thus, Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations . . .,

8

and (2) the time and place of each such statement and [where possible] the person responsible

for making (or, in the case of omissions, not making) same, . . ., and (3) the content of such

statements and the manner in which they misled the plaintiff, and (4) what the defendants

obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202

(11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364,

1371 (11th Cir. 1997)).

C.

Initially, insofar as Defendants complain that Daedalus is without standing to assert

derivative claims on behalf of LTC and that it has failed to satisfy the requirements of Rule

23.1, the Motion should be denied.  A fair reading of the Amended Complaint, in particular

Counts V, VI, VII, IX, and XIV, in the context of the General Allegations incorporated

therein, reveal that Daedalus brings suit in its own behalf and not on behalf of LTC.  The

requirements of Fed. R. Civ. 23.1 are simply inapplicable to the claims.

Insofar as Defendants seek dismissal under Rule 12(b)(6) of the RICO claims at

Counts I-IV for the failure to state claims for relief, the Motion should likewise be denied.

Defendant is correct that conclusory allegations and unwarranted deductions of fact or law

will not prevent dismissal.  Moreover, a complaint based on fraud must satisfy the

particularity requirements of Rule 9(b).  And, in order to survive a motion to dismiss,

"plaintiff must allege facts sufficient to support each of the statutory elements for at least two

of the pleaded predicate acts."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,

119 F.3d 935, 949 (11th Cir. 1997) (citation omitted).  But, any fair reading of the RICO

9

allegations set forth in the Amended Complaint reveals that Plaintiffs' allegations are, on the whole, stated with sufficient particularity to withstand the Motion to Dismiss.

The civil provision of the federal RICO statute provides that, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains . . . ." 18 U.S.C. § 1964(c).  To state a civil RICO claim, Plaintiffs must allege that (1) § 1962 was violated, (2) they were injured in their business or property, and (3) the § 1962 violation caused the injury.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) (citation omitted).  Thus, the elements of a civil RICO claim requires proof of (1) conduct; (2) of an enterprise; (3) through a pattern, (4) of racketeering activity.  *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000).[4]

As for the federal RICO conspiracy count, the provisions of 18 U.S.C. § 1962(d) make it unlawful for a person to conspire to violate the provisions of 18 U.S.C. §§ 1962(a)-(c).  To prove a RICO conspiracy, "the [claimant] must show an agreement to violate a substantive RICO provision."  *United States v. Castro*, 89 F.3d 1443, 1451 (11th Cir. 1996) (citation omitted).  Specifically, the proof must demonstrate "that the conspirators agreed to

---

[4]Under the Eleventh Circuit Pattern Jury Instructions, a plaintiff must prove each of the following by a preponderance of the evidence: first, that defendant derived income, either directly or indirectly, from a pattern of racketeering activity; second, that the defendant participated as a principal in the pattern of racketeering activity; third, that some part of that income, or proceeds of that income, was used to acquire or maintain an interest in, or to operate, an enterprise; and fourth, that the enterprise engaged in, or had some effect on, interstate or foreign commerce.  *Id.*

participate directly or indirectly in the affairs of the enterprise through a pattern of

racketeering activity."[5]  *Id.* at 1451 (citing 18 U.S.C. § 1962(d)).

As for the Florida RICO claims, Counts III and IV, the Florida RICO statute states

that it is unlawful for a person:

(1)     [w]ho has with criminal intent received any proceeds derived, directly or indirectly, from pattern of criminal activity . . .to use or invest, whether directly or indirectly, any part of such proceeds, . . . in the acquisition of . . . or in the establishment or operation of any enterprise.

(2)     Through a pattern of criminal activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . .

(3)     Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity . . .

(4)     To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

Fla. Stat. § 772.103.  Because § 772.103 is patterned after the federal RICO statute,

the Florida courts look to decisions interpreting the federal statute in interpreting § 772.103.

*See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004).

---

[5]Instruction 5.1 of the Eleventh Circuit Pattern Civil Jury Instructions specifies the following elements: (1) the defendant was associated with an "enterprise" as alleged and described by the plaintiff; (2) the defendant "knowingly" committed at least two of the predicate acts hereafter described; (3) the predicate acts formed a pattern by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics so that they were not isolated events; (4) the predicate acts amounted to, or threatened the likelihood of, continued criminal activity posing a threat of continuity projecting into the future; (5) through the commission of the two or more connected predicate acts, the defendant conducted or participated in the conduct of the affairs of the "enterprise;" (6) the "enterprise" was engaged in, or that its activities affected, interstate commerce; and (7) the plaintiff was injured in its business or property as a proximate result of the defendant's commission of the pattern of racketeering activity.

Here, as demonstrated in the Plaintiffs' response, the Amended Complaint alleges facts and reasonable inferences drawn therefrom supporting the allegations that these Defendants, individually and collectively, while associated in fact in an enterprise, committed predicate acts of racketeering and derived proceeds and other property therefrom or conspired to do so. While the allegations suggest varying degrees of involvement by the Defendants, I find the RICO allegations sufficient to withstand Defendants' challenge on this Motion.

In Count V, Daedalus asserts a claim for fraud in the inducement against Vinecombe and Riegl for allegedly false representations made to induce Daedalus to invest $1.25 million in LTC. Defendants contend the count should be dismissed because the allegations are conclusory and lack sufficient particularity for pleading a claim of fraud. They also contend that the claim is barred by the economic loss rule.

Under Florida law, to state a claim for fraud in the inducement, the plaintiff must allege: (1) a misrepresentation of material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation. *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So.2d 204, 209 (Fla. Dist. Ct. App. 2003) (citations omitted).

Here, the Complaint more than adequately alleges facts with sufficient particularity to withstand the claim that Plaintiffs fail to state a claim for relief. Specifically, Plaintiffs allege that Vinecombe and Riegl knowingly omitted material facts and knowingly made material false representations that they would act at all times in the best interest of LTC and would not compete with LTC during and after their employ with LTC and that Daedalus

justifiably relied upon the representations to its detriment.  As set forth in the General

Allegations of the Amended Complaint, Vinecombe is alleged to have made numerous other

representations to induce Daedalus to invest in LTC, and once the monies were received from

Daedalus, Defendants began using the monies to fund activities at LWW and to the detriment

of LTC.  In short, when read in full, the allegations in the Amended Complaint are more than

adequate to state this claim for relief.

As for Defendants' assertion that the claim is barred by the economic loss rule, the

assertion is incorrect.  The Florida Supreme Court recently clarified that the economic loss

rule applies only to cases involving product liability, not to cases involving parties in

contractual privity.  *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So.3d 399, 407

(Fla. 2013).  However, as Justice Pariente explained in her concurrence, ". . . our clarification

of the economic loss rule' applicability does nothing to alter these common law concepts.  For

example, in order to bring a valid tort claim, a party still must demonstrate that all of the

required elements for the cause of action are satisfied, including that the tort is independent of

any breach of contract claim . . . ."  *Tiara*, 110 So.3d at 408-09 (Pariente, J., concurring).  As

indicated above, at this juncture, there are sufficient allegations of a tort independent from a

breach of contract given the allegations of the representations that were made to Plaintiffs

before entering into the contract containing the non-complete clause.  As Florida courts have

recognized, whether a defendant was truthful during the formation of the contract is unrelated

to the events giving rise to any claim for breach of that contract.  *HTP, Ltd. v. Lineas Areas

Costarricenses, S.A.*, 685 So.2d 1238, 1239 (Fla. 1996) (citations omitted).

In Count VI, Plaintiffs assert a common law fraud claim against all Defendants. Again, Defendant argues that the allegations are conclusory and lack the particularly required for a fraud claim. In their view, no detail is provided concerning the alleged misrepresentations or how Plaintiffs were damaged in the amount of $5 million dollars.

The elements of common law fraud are as: (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance; (4) on the correctness of the representation; and (5) resulting damage to plaintiff. *In re Checkers Sec. Litig.,* 858 F. Supp. 1168, 1179 (M.D. Fla. 1994) (citing *Perry v. Cosgrove,* 464 So.2d 664, 666 (Fla. Dist. Ct. App. 1985)). Here, the allegations of common law fraud appear the same as those relied upon for the RICO counts. Plaintiffs reincorporate the allegations that Defendants made false and misleading statements and concealed material events surrounding the QU and ConnSCU contracts, and thereby wrongly diverted proceeds away from LTC to LWW, the Vinecombes, and Riegl. Thus, Vinecombe and Riegl are alleged to have used false representations and concealed the truth to misappropriate the QU contract and opportunities. Plaintiffs assert that had they known the true facts, LTC would not have authorized LWW to resell LTC's technology and software to QU or other third parties for $100,000. Additionally, LWW, all the Vinecombes, and Riegl are alleged to have used their misrepresentations and the concealment of facts to siphon off QU and ConnSCU business opportunities to LWW. In addition to the alleged theft and conversion of checks, Adam and Eric Vinecombe, as employees of LWW, along with their father, are alleged to have made false representations and created false invoices and documents in connection with the ConnSCU contract and falsely represented the QU business

14

opportunity as well.  Plaintiffs again cite to the alleged misrepresentations made by Vinecombe and Riegl leading to Daedalus's investment of $1.25 million in LTC.  Riegl is alleged to have acted on behalf of his consulting company, Swiftsure, to attempt the diversion of future business opportunities with QU away from LTC.

While the allegations in this count are more difficult to discern as they depend upon a number of allegations set forth in the General Allegations, the fraudulent conduct relied upon in this count is the same as that alleged in the RICO counts.  Thus, when read in full, the allegations in the Amended Complaint adequately and with particularity set forth the fraudulent conduct supporting the claim, Plaintiffs' reliance on the same, and the harm caused to Plaintiffs.[6]

In Count VII, Plaintiffs allege that Vinecombe and Riegl on the one-hand, and the remaining Defendants, except for Swiftsure, on the other hand, engaged in a conspiracy to conceal the contracts with QU and ConnSCU and to conceal LTC's business prospects with QU, to divert proceeds flowing from the contracts away from LTC, and to cause the issuance of a fraudulent license agreement for the use of LTC software and technology and the release of LTC's source codes.[7]  Once again, Defendants complain that the allegations are wholly conclusory and do not support an inference of an agreement between the Defendants.

---

[6]Suffice it to say, that I find the allegations made specifically against Swiftsure in the RICO counts and in this count fairly weak.  However, to the extent that Riegl's conduct, statements and omissions or concealment of facts may be attributed to it, I conclude that the Court is better left to address the arguments after discovery clarifies the company's involvement in the alleged scheme.

[7]Plaintiffs allege in this count that Sovereign Bank aided and abetted the conspiracy. As noted above, Sovereign is no longer a party to the suit.

A complaint for civil conspiracy must allege, (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1159-60 (Fla. Dist. Ct. App. 2008)); *see also Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*, 616 So.2d 562, 565 (Fla. Dist. Ct. App. 1993). Moreover, under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong. *Fla. Fern Growers Ass'n, Inc.*, 616 So.2d at 565. The existence of a conspiracy agreement can be inferred from the conduct of the alleged participants or from the circumstantial evidence of the scheme. *United States v. Church*, 955 F.2d 688, 694-95 (11th Cir. 1992) (citations omitted).

Once again, I conclude that, when the whole of the allegations are read, Plaintiffs have adequately stated a cause of action for civil conspiracy to defraud the Plaintiffs. As alleged, the conspiratorial agreement may be inferred and the unlawful overt acts are more that adequately identified, as are the sources of Plaintiffs' damages.

In Count IX, LTC sues all Defendants for aiding and abetting and/or conspiring to breach a fiduciary duty. More particularly, Plaintiffs allege that Vinecombe, as officer and director of LTC, and Riegl, as officer of LTC, each owed LTC a fiduciary duty to discharge their duties in good faith and with the due care of an ordinarily prudent officer or director and in a manner reasonably believed to be in LTC's best interests. According to Plaintiffs, they instead exhibited grossly negligent, reckless, and/or fraudulent disregard for the best interests of LTC and Daedalus by engaging in a scheme to defraud LTC and advance the interests of

16

all Defendants.  Plaintiffs further alleged that the remaining Defendants had knowledge of

Vinecombe's and Riegl's breaches, rendered substantial assistance in regards to the breaches,

and actively conspired with Vinecombe and Riegl with respect to such breaches thereby

causing damages to each Plaintiff.  Defendants again argue that the allegations are conclusory

and insufficient to state a fraud claim.  In particular, they complain that the allegations again

fail to state that LTC was entitled to receive monies that allegedly were gained by LWW and

the Defendants during the alleged conspiracy.

Initially, I conclude that Florida law recognizes a claim for aiding and abetting a

breach of fiduciary duty.  *See Amerifirst Bank v. Bomar,* 757 F. Supp. 1365, 1380 (S.D. Fla.

1991) ("the majority of case law, including that in Florida, recognizes a cause of action for

aiding and abetting common law torts, such as breach of fiduciary duty.").  The four elements

of such a claim are: "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of

this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the

aider and abettor's substantial assistance or encouragement of the wrongdoing".  *Id.* (citations

omitted).  And here, to the extent that such a claim for aiding and abetting a breach of

fiduciary duty is actionable, the Amended Complaint, when read in full, adequately alleges

such a claim.  Defendants do not challenge that Vinecombe and Riegl owed LTC a fiduciary

duty.  While Defendants deny the fraudulent conduct set forth in the Amended Complaint and

Plaintiffs' claims to the allegedly ill-gotten gains, the allegations of self-dealing and the

various ways Vinecombe and Riegl acted in a manner contrary to LTC's interests and

inconsistent with any fiduciary duty owed to LTC, as well as the knowing and substantial

17

support provided by the other Defendants to assist in the breaches and the disbursement of ill-gotten gains, are sufficiently set forth to survive this Motion..

In Count X, LTC sues all Defendants except Swiftsure for conversion in connection with the alleged wrongful diversion and dissipation of $5 million from the QU contract and from the 27 checks payable to LTC which were deposited into the LWW account.  Here, Defendants challenge this claim as well because Plaintiffs fail to allege that they were entitled to the monies, a necessary element of such a claim.

To state a claim for conversion of money under Florida law, Plaintiffs must allege: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003); *see also Lewis v. Heartsong, Inc.,* 559 So. 2d 453, 454 (Fla. 1st Dist. App. 1990) (claim of conversion was sufficiently stated when complaint alleged all four elements).  Conversion does not require proof of knowledge or intent to deprive one of his property. *Bailey*, 288 F. Supp. 2d at 1264.

Here, Defendants claim that Plaintiffs fail to expressly allege their entitlement to the proceeds from the QU contract, which is significant given that a plaintiff must allege and prove its immediate right to the monies or property allegedly converted.  While it appears correct that there is no express allegation concerning the purported $5 million of funds from QU, I find that LTC's claim of entitlement to the QU proceeds is reasonably inferred from the allegations by Plaintiffs that Defendants engaged in fraudulent conduct to conceal the QU contract and to divert the proceeds of the same away from LTC and to LWW.  As for the

18

alleged conversion of 27 checks payable to the order of LTC in connection with the

ConnSCU contract, the checks themselves, as acknowledged by Defendants, suggest LTC's

entitlement to the monies.  Thus, while the claim could have been better stated, it should not

be dismissed on this Motion.

In Count XI, LTC sues Vinecombe, as an officer and director of LTC, and Riegl, as

an officer of LTC, for breach of their fiduciary duties.  Thus, it alleges that instead of

discharging their duties with due care, and with honesty, loyalty and fidelity to LTC,

Vinecombe and Riegl acted to advise and protect the interests of themselves and the

remaining Defendants by receiving, in bad faith, $5 million in fraudulent transfers for no

reasonably equivalent value, by dispersing the same among themselves, by failing to protect

LTC's interests in the QU and ConnSCU contracts, and by providing or causing to be

provided a materially inaccurate sworn declaration regarding the ConnSCU transaction for

their own benefit.  Defendants again urge that the allegations are conclusory and unsupported

by specific allegations to support a claim for fraud.  They also urge once again that LTC fails

to allege why it is entitled to monies from the QU and ConnSCU contracts or how it suffered

$5 million in damages.

To state a claim for breach of fiduciary duty under Florida law, a plaintiff must

allege (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages that are

proximately caused by that breach.  *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002).

In short, when read in full, the allegations concerning this count are more than

adequate to state a cause of action for breach of fiduciary duty.

19

Finally, in Count XII, LTC realleges and reincorporates the wide-ranging General Allegations and sues the Vinecombes and LWW for civil theft pursuant to Fla. Stat. § 772.11. LTC alleges that Defendants' acts constituted violations under Fla. Stat. §§ 812.012-812.037, thereby causing damage to LTC's person and property which permit it to sue for treble damages.[8]  Once again, Defendants argue that the allegations are wholly conclusory and it is unclear what is being claimed.  Assuming that the claim is based on LWW's receipt of payments from ConnSCU and EMC, although such is not clear, Defendants urge LTC's claim is insufficient.  An element of the theft claim is that a defendant acted with the intent to deprive plaintiff of a right to the property or to appropriate the property to their own use or the use of a person not entitled to, and here, Defendants again urge that Plaintiffs fail to allege that LTC was entitled to the monies from ConnSCU and EMC or that it performed any services to merit such claim.

Under Florida law, a person who is injured by a violation of section 812.014(1) (theft) can recover three times the damages sustained, plus costs and attorney's fees.  Fla. Stat. § 772.11(1).  "[T]o establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent."  *Gersh v. Cofman*, 769 So.2d 407, 409 (Fla. Dist. Ct. App. 2000) (citations omitted).  To state a claim for civil theft under Florida law, a plaintiff must allege that the defendant knowingly obtained plaintiff's property with felonious intent to deprive plaintiff, either temporarily or permanently, of its right to the

---

[8]In response to Defendants' Motion, Plaintiffs assert that these Defendants stole LTC's business opportunity and contract with QU and 27 checks payable to LTC that were diverted and deposited to the account of LWW.

property. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11, 812.014); *see also In re Standard Jury Instructions in Civil Cases-Report No. 09-01*, 35 So.3d 666, 761 (Fla. 2010) (instruction 411).

As with the fraud count above, were the conclusory allegations set forth in the count the only allegations, then the Motion would be well-taken. However, those conclusory allegations are necessarily read in the context of the allegations which allege that the Vinecombes and LWW stole checks payable to LTC for deposit into LWW's account and the allegations that Defendants engaged in felony theft by stealing LTC's business opportunities/contracts, application software, and computer source code. These allegations are sufficiently pleaded to survive the Motion.

D.

For the foregoing reasons, it is **RECOMMENDED** that **Defendants' Motion to Dismiss** (Doc. 112) be **DENIED** as to Counts I-VII, and IX-XII.

Respectfully submitted this
22nd day of August 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an

21

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable Mary S. Scriven, United States District Judge
Counsel of Record